IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-16-53-RAW |
| ) | |
| **ABDOLMAJID MOVAGHAR**, ) | |
| Defendant. ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF FRCrP 29 MOTION

Defendant Abdolmajid Movaghar *a.k.a.* Steve Movaghar, by and through his attorney Robert Williams, Assistant Federal Public Defenders, submits this Brief in Support of his Federal Rule of Criminal Procedure Rule 29 Motion and supporting brief to assist the Court with the applicable law at issue.

**I. First Amendment Law**

The First Amendment to the Constitution guarantees many freedoms in the United States, including freedom of assembly, religion, and speech. These are inalienable rights afforded to all individuals. At issue here is the freedom of speech. The First Amendment prohibits Congress from restricting the rights of individuals to speak freely. *U.S. Const. Amend. I*. However, this right does have limits. Some categories of speech which are not afforded protection by the First Amendment might be obscenity, fighting words, defamation, child pornography, perjury, blackmail, incitement, and true threats. The issue before this Court is whether the statements made by Mr. Movaghar are "true threats" or protected speech under the First Amendment.

### A. True Threats

The Supreme Court first addressed the issue of true threats in *Watts v. United States*, 89 S.Ct. 1399 (1969). In *Watts*, the defendant was charged with making threats against the President of the United States. Mr. Watts' statements were in opposition to entering the draft. He stated "if they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id* at 1401. The Supreme Court held that:

> the statute initially requires the Government to prove a true 'threat.' We do not believe that the kind of political hyperbole indulged in by petitioner fits within that statutory term. For we must interpret the language Congress chose 'against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.

*Id.*

Unfortunately, the *Watts* Court did not define what a "true threat" is or what the government must prove in order to convict a defendant. Since *Watts,* the Supreme Court has provided little guidance to the lower courts in determining what elements are necessary for speech to constitute a true threat.

In *Virginia v. Black*, Justice O'Conner stated that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. 538 U.S. 343, 359, 123 S. Ct. 1536, 1548, 155 L. Ed. 2d 535 (2003) (citing *Watts v. United States, supra,* at 708, 89 S.Ct. 1399 ("political hyberbole" is not a true threat)).

Most recently in *Elonis v. United States,* the Court examined what mental state was required to convict an individual of making a threat under 18 U.S.C. § 875(c). 135 S. Ct. 2001, 2012, 192 L. Ed. 2d 1 (2015). The court held that "the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id*. However, the Court only found that mere negligence was insufficient to convict Elonis, and declined to decide whether one could be convicted on a finding of recklessness, or if more was needed. *Id.*

Since the *Elonis* decision, the Tenth Circuit has addressed the issue of what *mens rea* is necessary to constitute a true threat in *United States v. Twitty*, 641 Fed. Appx. 801 (10th Cir. 2016)(unpublished). In *Twitty*, Mr. Twitty sent letters to a United States District Court Judge and to a U.S. Attorney expressing his desire to see judges and prosecutors die, and that his mass arsenal what will keep him safe when then FBI came to arrest him. The court held that the jury must find that the defendant subjectively intended that his communications be viewed as threats. *Twitty*, 641 Fed. Appx. at 805-06. In reaching this holding the court found "that determining the defendant's subjective intent requires a jury to address considerations not directly relevant to an objective reasonable-person standard. *Id*. at 805. "Determination of a defendant's subjective intent for purposes of ***mens rea*** often requires consideration of the mental state of an *unreasonable* person, whose words, though objectively threatening, may involve "ranting and raving" and "venting ... frustration" rather than subjectively intended threats. *Id.* (citing *United States v. Houston*, 792 F.3d 663, 668 (6th Cir. 2015)).

### B. The Present Case

The government Indicted Mr. Movaghar, with Use of Telephone to Make Bomb Threat in violation of 18 U.S.C. § 844(e). The Tenth Circuit has found that 18 U.S.C. § 844(e) has similar

language in all relevant aspects to the statutes at issue in *Watts* and therefore involves the "true threat" issue. *United States v. Viefhaus*, 168 F.3d 392, 395 (10th Cir. 1999).

The conduct at issue in this case is a phone call that the defendant made to the Chickasaw Lighthorse Police. The call is predicated on Mr. Movaghar's arrest for trespassing and simple possession of controlled substances while at the tribal casino. After his arrest, Mr. Movaghar was unable to post a bond. Therefore, he remained in custody for over a month. After being released, Mr. Movaghar returned to the casino to retrieve his vehicle only to find that it had been towed.

On March 10, 2016, Mr. Movaghar called to the Lighthorse Police Department. The call was recorded. The recording clearly shows that Mr. Movaghar was very upset about his car being towed. During Mr. Movaghar's rant, he states several times that he is from Texas. This statement implies "don't mess with Texas" which is a common saying and a motto of the state. Mr. Movaghar's conduct is clearly "ranting and raving" and "venting frustration" similar to the conduct at issue in the *Twitty* case. It would be reasonable for this Court to find that the defendant did not have the subjective intent to communicate a true threat. In *Twitty,* the Tenth Circuit noted that:

> A reasonable jury might have determined, for example, that the crazed and demented tone of Mr. Twitty's letters, together with his implausible claims such as an assertion that he had access to a grenade launcher and the toxin ricin, created a reasonable doubt concerning his subjective intent that his communication be viewed as an actual threat, or his knowledge that it would be so viewed.

641 Fed. Appx. at 805. Like the letters in *Twitty*, Mr. Movaghar's rants certainly have a crazy tone. Additionally, Mr. Movaghar never mentions any specifics about a target location, a time, a plan, or a person. When questioned by law enforcement he never denies making the call and states that he did not mean it as a threat and that he was just mad. He informed law enforcement

that he did not have access to any bomb making materials and he didn't know how to make a bomb. Because Mr. Movaghar did not have the subjective intent to make a threat, he cannot be found guilty of making a bomb threat.

        Respectfully submitted,

        **OFFICE OF THE FEDERAL PUBLIC DEFENDER**
        Julia L. O'Connell, Federal Public Defender

    By:    s/Robert Williams
        Robert S. Williams, OK BAR#19974
        627 W Broadway
        Muskogee, OK 74401
        (918) 687-2430
        Counsel for Defendant